

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELODRAMA PUBLISHING LLC,

                             *Plaintiff,*

- against -

K.S. PUBLICATIONS and
KIKI SWINSON,

                             *Defendants.*

---

K.S. PUBLICATIONS and
KIKI SWINSON,

                             *Counterclaim-Plaintiffs,*

-against-

MELODRAMA PUBLISHING LLC,

                             *Counterclaim-Defendant,*

CRYSTAL LACEY WINSLOW and
WINSLOW SHIM LITERARY AGENCY, INC.,

                             *Third-Party Defendants.*

---

Case No. 10-CV-9406 **(RJS)**

**ANSWER,
COUNTERCLAIMS and
THIRD-PARTY COMPLAINT**

Defendants K.S. Publications and Kiki Swinson, as and for their Answer to the Amended

Complaint of Plaintiff Melodrama Publishing LLC ("Melodrama"), state as follows:

## ANSWER

1.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 1 of the Amended Complaint.

2.     With respect to the allegations of Paragraph 2 of the Amended Complaint, Defendants admit that K.S. Publications is a business entity, but deny the allegation that it "does business" in New York State because that allegation is conclusory and too vague and ambiguous to be capable of a response.

3.     With respect to the allegations of Paragraph 3 of the Amended Complaint, Defendants admit that Kiki Swinson is a resident of the State of Virginia, but deny the allegation that she "does business" in New York State because that allegation is conclusory and too vague and ambiguous to be capable of a response.

4.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 4 of the Amended Complaint.

5.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 5 of the Amended Complaint.

6.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 6 of the Amended Complaint.

7.     Defendants admit the allegation in the first sentence of Paragraph 7 of the Amended Complaint, and otherwise deny the allegations therein.

8.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 8 of the Amended Complaint, except admit that Swinson was introduced to Cross-Claim Defendant Crystal Winslow ("Winslow") in or about 2004.

9.     Defendants admit the allegations of Paragraph 9 of the Amended Complaint.

2

10.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 10 of the Amended Complaint, and further state that those allegations are conclusory and too vague and ambiguous to be capable of a response.

11.     Defendants deny the allegations of Paragraph 11 of the Amended Complaint.

12.     Defendants admit the allegations of Paragraph 12 of the Amended Complaint, except deny knowledge or information as to whether the book "instantly" became "an *Essence* magazine best selling book.

13.     Defendants admit the allegations of Paragraph 13 of the Amended Complaint.

14.     Defendants admit the allegations in the first sentence of Paragraph 14 of the Amended Complaint, and deny the allegations in the second sentence thereof.

15.     Defendants deny the allegations of Paragraph 15 of the Amended Complaint.

16.     Defendants admit the allegations of Paragraph 16 of the Amended Complaint.

17.     Defendants admit the allegations of Paragraph 17 of the Amended Complaint.

18.     Defendants deny the allegations of Paragraph 18 of the Amended Complaint.

19.     Defendants admit the allegations of Paragraph 19 of the Amended Complaint, except deny knowledge or information as to whether the book "quickly" became "an *Essence* magazine best selling book.

20.     Defendants deny the allegations of Paragraph 20 of the Amended Complaint, and state further that Swinson was induced by Winslow and Winslow Shim to retain them as her exclusive literary agent.

21.     Defendants deny the allegations of Paragraph 21 of the Amended Complaint, except with respect to the terms of the referenced contracts, which speak for themselves.

22.     Defendants admit the allegations of Paragraph 22 of the Amended Complaint.

3

23. Defendants deny the allegations of Paragraph 23 of the Amended Complaint, except with respect to the terms of the referenced contracts, which speak for themselves, and state further that Swinson was induced to enter into the referenced contracts by Winslow and Winslow Shim acting as her exclusive literary agents.

24. Defendants admit the allegations of Paragraph 24 of the Amended Complaint, and state further that Swinson was induced to enter into the referenced contracts by Winslow and Winslow Shim acting as her exclusive literary agents.

25. With respect to the allegations in Paragraph 25 of the Amended Complaint, Defendants admit that *Wifey 4 Life (Wifey Part 5)* was published in March 2010, and otherwise respectfully refer the Court to the agreement for its terms.

26. With respect to the allegations in Paragraph 26 of the Amended Complaint, the Defendants respectfully refer the Court to the agreement for its terms.

27. Defendants deny the allegations of Paragraph 27 of the Amended Complaint.

28. Defendants deny the allegations of Paragraph 28 of the Amended Complaint, except admit that Winslow (acting at that point through Melodrama, and not in her continuing role as Swinson's exclusive literary agent) sent the referenced letter.

29. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 29 of the Amended Complaint.

30. Defendants deny the allegations of Paragraph 30 of the Amended Complaint, except acknowledge that Winslow (in her dual capacities as the president of Melodrama and Winslow Shim) did attempt to induce Swinson into entering into an additional publishing agreement with Melodrama.

31. Defendants deny the allegations of Paragraph 31 of the Amended Complaint.

4

32. Defendants deny the allegations of Paragraph 32 of the Amended Complaint.

33. Defendants deny the allegations of Paragraph 33 of the Amended Complaint.

34. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 34 of the Amended Complaint.

35. Defendants admit the allegations of Paragraph 35 of the Amended Complaint.

36. Defendants deny the allegations of Paragraph 36 of the Amended Complaint, except with respect to the terms of the referenced e-mail, which speaks for itself.

37. Defendants deny the allegations of Paragraph 37 of the Amended Complaint.

38. Defendants deny the allegations of Paragraph 38 of the Amended Complaint.

39. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 39 of the Amended Complaint.

40. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 40 of the Amended Complaint.

41. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 41 of the Amended Complaint.

42. Defendants deny the allegations of Paragraph 42 of the Amended Complaint.

43. Defendants deny the allegations of Paragraph 43 of the Amended Complaint.

44. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 44 of the Amended Complaint.

45. Defendants admit that Winslow called Swinson on or about May 28, 2010, and otherwise deny the allegations of Paragraph 45 of the Amended Complaint.

46. With respect to the allegations in Paragraph 46 of the Amended Complaint, the Defendants respectfully refer the Court to the e-mail for its terms, which speak for themselves.

5

47.     With respect to the allegations in Paragraph 47 of the Amended Complaint, the Defendants respectfully refer the Court to the agreement for its terms, which speaks for itself.

48.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 48 of the Amended Complaint.

49.     Defendants deny the allegations of Paragraph 49 of the Amended Complaint.

50.     Defendants deny the allegations of Paragraph 50 of the Amended Complaint.

51.     With respect to the allegations in Paragraph 51 of the Amended Complaint, the Defendants respectfully refer the Court to the letter for its terms, which speaks for itself.

52.     With respect to the allegations in Paragraph 52 of the Amended Complaint, the Defendants respectfully refer the Court to the letter for its terms, which speaks for itself.

53.     With respect to the allegations in Paragraph 53 of the Amended Complaint, the Defendants respectfully refer the Court to the letter for its terms, which speaks for itself.

54.     With respect to the allegations in Paragraph 54 of the Amended Complaint, the Defendants respectfully refer the Court to the letter for its terms, which speak speaks for itself.

55.     Defendants deny the allegations of Paragraph 55 of the Amended Complaint.

56.     Defendants deny the allegations of Paragraph 56 of the Amended Complaint.

57a.    Defendants repeat the responses to Paragraphs 1 through 56 of the Amended Complaint.

57b.    With respect to the allegations in Paragraph 57b of the Amended Complaint, the Defendants respectfully refer the Court to the agreement for its terms, which speak for themselves.

58.     Defendants deny the allegations of Paragraph 58 of the Amended Complaint.

59.     Defendants deny the allegations of Paragraph 59 of the Amended Complaint.

6

60. Defendants deny the allegations of Paragraph 60 of the Amended Complaint.

61. Defendants admit the allegations of Paragraph 61 of the Amended Complaint.

62. Defendants deny the allegations of Paragraph 62 of the Amended Complaint, except admit the publication of the referenced book.

63. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 63 of the Amended Complaint, including but not limited to Melodrama's understanding of the terms "sequel" and "based substantially."

64. Defendants admit the allegations of Paragraph 64 of the Amended Complaint.

65. Defendants deny the allegations of Paragraph 65 of the Amended Complaint.

66. Defendants deny the allegations of Paragraph 66 of the Amended Complaint.

67. Defendants repeat the responses to Paragraphs 1 through 66 of the Amended Complaint.

68. With respect to the allegations in Paragraph 68 of the Amended Complaint, the Defendants respectfully refer the Court to the agreement for its terms, which speaks for itself.

69. Defendants deny the allegations of Paragraph 69 of the Amended Complaint.

70. Defendants deny the allegations of Paragraph 70 of the Amended Complaint.

71. Defendants deny the allegations of Paragraph 71 of the Amended Complaint.

72. Defendants admit the allegations of Paragraph 72 of the Amended Complaint.

73. Defendants deny the allegations of Paragraph 73 of the Amended Complaint.

74. Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 74 of the Amended Complaint, including but not limited to Melodrama's understanding of the terms "sequel" and "based substantially."

75. Defendants deny the allegations of Paragraph 75 of the Amended Complaint.

7

76.     Defendants deny the allegations of Paragraph 76 of the Amended Complaint.

77.     Defendants repeat the responses to Paragraphs 1 through 76 of the Amended Complaint.

78.     With respect to the allegations in Paragraph 78 of the Amended Complaint, the Defendants respectfully refer the Court to the agreement for its terms, which speaks for itself.

79.     Defendants deny the allegations of Paragraph 79 of the Amended Complaint.

80.     Defendants deny the allegations of Paragraph 80 of the Amended Complaint.

81.     Defendants deny the allegations of Paragraph 81 of the Amended Complaint.

82.     Defendants deny the allegations of Paragraph 82 of the Amended Complaint, except admit the publication of the referenced letter, the terms of which speaks for itself.

83.     Defendants deny knowledge or information sufficient to form a belief with respect to the allegations of Paragraph 83 of the Amended Complaint.

84.     Defendants deny the allegations of Paragraph 84 of the Amended Complaint.

85.     Defendants deny the allegations of Paragraph 85 of the Amended Complaint.

86.     Defendants repeat the responses to Paragraphs 1 through 85 of the Amended Complaint.

87.     Defendants deny the allegations of Paragraph 87 of the Amended Complaint.

88.     Defendants deny the allegations of Paragraph 88 of the Amended Complaint.

89.     Defendants deny the allegations of Paragraph 89 of the Amended Complaint.

90.     Defendants admit the allegations of Paragraph 90 of the Amended Complaint.

91.     Defendants deny the allegations of Paragraph 91 of the Amended Complaint.

92.     Defendants deny the allegations of Paragraph 92 of the Amended Complaint.

93.     Defendants deny the allegations of Paragraph 93 of the Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Complaint fails because the alleged contracts are void on the grounds of duress.

## THIRD AFFIRMATIVE DEFENSE

The Complaint fails because the alleged contracts are void because they are procured

through Plaintiff's breach of fiduciary duty

## FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of impossibility of performance.

## FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred because of Plaintiff illegal acts (including, but not limited to,

usurious conduct), fraud, and violation of state and federal statutes, regulations, and common law

governing consumer lending, debt collection and predatory practices such as that engaged in by

Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are equitably subordinate to the claims of other creditors.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint fails because the material agreement lacked consideration.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of unconscionability.

## NINTH AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of unjust enrichment.

## TENTH AFFIRMATIVE DEFENSE

The Complaint is barred, and Plaintiff's claim to damages void, due to Plaintiff's culpable conduct.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Swinson, as and for her Counterclaims against Melodrama and her Third-Party Complaint against Crystal Winslow ("Winslow") and Winslow Shim Literary Agency, Inc. ("Winslow Shim"), alleges as follows:

### A. Parties, Jurisdiction and Venue

1. Counterclaim Plaintiff Swinson is a citizen of Virginia and resides in Virginia Beach, Virginia.[1]

2. Counterclaim Defendant Melodrama is, by its own acknowledgement, a New York limited liability company with its principal place of business in East Patchogue, New York.

3. Third-Party Defendant Winslow Shim is, by its own acknowledgement, a New York corporation with its principal place of business in East Patchogue t, New York.

4. On information and belief, Third-Party Defendant Winslow is a citizen of New York, and resides at 944 Scherger Avenue, East Patchogue, NY 11772. For most of the period relevant to this action, she was on information and belief a citizen and resident of the State of New York.

5. This Court has personal jurisdiction over Winslow pursuant to N.Y.C.P.L.R. 302(a)(2) because she committed the tortious acts giving rise to the claims against her in New York.

---

[1] K.S. Publications, which is not a party to the Counterclaims/Cross-Claims, is an unincorporated entity located in Virginia Beach, Virginia.

6.      This Court has subject matter jurisdiction over this action, including these Counterclaims and Third-Party Complaint, pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue lies in this District pursuant to 28 U.S.C § 1391(a) because a substantial portion of the acts and omissions giving rise to this action, including these Counterclaims and Third-Party Complaint, occurred in this District.

**B.      Facts Pertinent to the Counterclaims and Cross-Claims**

8.      Both Melodrama (a book publishing company) and Winslow Shim (a literary agency) are owned and operated by Winslow. This case is about Winslow's scheme to leverage her dual roles unlawfully at Swinson's expense.

9.      On or about April 12, 2006, Swinson entered into an agreement with Winslow and Winslow Shim providing that they were to act as her "exclusive literary agent." As late as September 15, 2010, when this action was commenced, Winslow Shim and Winslow considered that exclusive agency agreement to be in full force and effect. In fact, in the Verified Complaint of that date (annexed hereto as Exhibit A), which included Winslow Shim as a plaintiff, includes a claim against Swinson for alleged breach of the literary agency agreement as well as for the alleged breaches of the publishing agreements that remain in the Amended Complaint.

10.     The Amended Complaint omits virtually all references to Winslow Shim or to Winslow's ongoing role as Swinson's exclusive literary agent. But that omission does not change the fact that they served in that role from 2006 through 2010.

11.     As Swinson's exclusive literary agent, Winslow and Winslow Shim owed her a fiduciary duty of loyalty. The scope of that duty is reflected in the Canon of Ethics of the

11

Association of Authors' Representatives, the leading trade organization for literary agents. Most significant for present purposes, is the Canon concerning compensation:

> Member's compensation for all transactions shall be derived solely from the client. A member who represents a client in the grant of rights in any property owned or controlled by the client may not accept any other form of compensation or other payment from the acquirer of such rights. Members shall not represent both buyer and seller in the same transaction.

12.     Moreover, literary agents are to "allow no conflict of interest that would interfere" with the duty to loyally serve the author, and only the author.

13.     It is impossible to imagine a more egregious breach of these principles than the one that occurred in this case. Winslow used her fiduciary relationship with Swinson as literary agent (through Winslow Shim) to steer Swinson into entering into publishing contracts with Winslow (through Melodrama). Even more brazenly, she openly demanded compensation from Swinson both as literary agent and publisher, even going so far as to sue Swinson in this action originally in both capacities. (*See* Exhibit A at ¶¶ 90-100 (suing Swinson for compensation as her "exclusive literary agent") and at ¶¶ 108-115, 124-142 (suing Swinson for breach of publishing agreements).) The fact that Winslow has now caused Winslow Shim to drop the claim for compensation under its agency agreement with Swinson in no way reduces the outrageous nature of their conduct.

14.     The parties to the three publishing agreements addressed in the Amended Complaint (the "Unlawful Agreements") were Swinson and Melodrama, acting through Winslow in her capacity as "Publisher." Each of these Agreements was executed at the same time that Winslow, through Winslow Shim, was also Swinson's exclusive literary agent.

15.     The rights granted to Melodrama under the Unlawful Agreements were outrageously broad. For example, each contains a prohibition (ironically, in the Paragraph with

12

the heading "Author's Rights"), against Swinson publishing any book during the 95-year copyright term of the book at issue "any book or other writing based substantially on subject matter, material, characters or incidents in the Work." Swinson's works are series with recurring characters. Thus, Winslow, as Swinson's literary agent, had Swinson sign away to Winslow, as Swinson's publisher, not only the rights to the book in question, but all rights to her future output.

16.     In addition, the second and third Unlawful Agreements each contain a provision that was not in the first such Agreement giving Melodrama an exclusive option, valid until 60 days after the publication of the subject book, on Swinson's next book. Winslow, acting as Swinson's exclusive literary agent, explicitly stated that the later Agreements did not contain such a provision, and Swinson relied on that statement in signing the agreements.

17.     It is therefore clear that Winslow exploited her position of trust as Swinson's literary agent to her advantage as Swinson's publisher. That misconduct was a flagrant breach of her fiduciary duties to Swinson. Accordingly, each of the Unlawful Agreements is void *ab initio*, and therefore unenforceable by Melodrama.

18.     In addition, a faithless fiduciary is obligated to disgorge all monies received as a result of her misconduct. In this case, Winslow, the faithless fiduciary, not only must disgorge the monies she received through Winslow Shim as literary agent, but also the monies she received through Melodrama as publisher. Not surprisingly, Winslow kept Swinson in the dark about how much she has earned through her exploitation of Swinson, but based on the sales of the books at issue, the sum is likely to exceed $1 million.

19.     Swinson is entitled to an accounting to determine the amounts by which Winslow, Melodrama and Winslow Shim have been unjustly enriched at her expense. Moreover, even if

13

the Unlawful Agreements had any validity, notwithstanding the undisputed fact that the

Winslow, the "Publisher" under those agreements, was also Swinson's exclusive literary agent,

Winslow and Melodrama have failed to account for the royalties owed Swinson under those

Agreements. Accordingly, if the Court declines to declare the Agreements void *ab initio*, it

should nevertheless order an accounting in order to determine the royalties due Swinson.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

20.     Swinson repeats and realleges the allegations in Paragraphs 1 through 19 of her

Counterclaims and Third-Party Complaint.

21.     As Swinson's exclusive literary agents, Winslow and Winslow Shim owed her

fiduciary duties, including the duty to act loyally and in furtherance of her best interests.

22.     In reality, Winslow and Winslow Shim not only failed to act in Swinson's best

interests, but used their position of trust to work directly against those interests, and instead to

enrich Winslow herself in her guise as "Publisher."

23.     Their actions were a flagrant and deliberate breach of their fiduciary duties.

24.     Such breaches include the abuse of their fiduciary status to induce Swinson to

enter into the Unlawful Agreements between Melodrama (*i.e.* Winslow in her guise as

"Publisher").

25.     Swinson has been damaged as a result of such breaches, in an amount to be

proved at trial.

14

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

26.     Swinson repeats and realleges the allegations in Paragraphs 1 through 25 of her Counterclaims and Third-Party Complaint.

27.     The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to declare the rights of parties to an actual controversy within its jurisdiction.

28.     There is an actual controversy between Melodrama and Swinson. Melodrama is seeking to enforce the Unlawful Agreements. However, because those Agreements were procured by Winslow, its principal, through her flagrant breach of her fiduciary duties to Swinson, they are subject to being voided *ab initio*.

29.     Accordingly, Swinson respectfully requests that the Court enter judgment declaring the Unlawful Agreements void *ab initio*.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

30.     Swinson repeats and realleges the allegations in Paragraphs 1 through 29 of her Counterclaims and Third-Party Complaint.

31.     A faithless fiduciary is legally obligated to disgorge all sums received as a result of her breach of her fiduciary duties.

32.     Winslow, acting for herself and on behalf of Winslow Shim, breached her duties as Swinson's exclusive literary agent.

33.     Winslow's breaches unjustly enriched not only Winslow Shim and Winslow-as-agent, they were the cause of the unjust enrichment of Melodrama (Winslow-as-Publisher). Indeed, the very purpose of Winslow insinuating herself as Swinson's agent was to enrich herself through Melodrama as Swinson's publisher.

15

34.    Accordingly, every penny of revenue received by Melodrama/Winslow under the Unlawful Agreements and received by Winslow Shim/Winslow as Swinson's faithless literary agent, must, in equity and good conscience, be disgorged to Swinson.

35.    The amount by which Winslow, Melodrama and Winslow Shim were unjustly enriched is currently unknown to Swinson, but on information and belief exceeds $1 million.

16

**JURY DEMAND**

Swinson and K.S. Publications demand a jury trial on all matters triable before a jury.

**WHEREFORE**, Swinson demands judgment as follows:

A.  A declaration that the Unlawful Agreements are void *ab initio*;

B.  An award of the amounts by which Winslow, Melodrama and Winslow Shim were unjustly enriched at Swinson's expense, to be determined by an accounting of their books and records, but not less than $1 million;

C.  Compensatory damages to be proved at trial;

D.  Punitive damages to be established at trial as a result of Winslow's and Winslow Shim's willful and wanton breaches of their fiduciary duties to Swinson;

E.  Such other and further relief as the Court deems just and proper, including the costs and disbursements of this action and Swinson's reasonable attorneys' fees.

Dated: New York, New York
       December 21, 2010

LYNN & CAHILL LLP

John R. Cahill (JC-4229)
Ronald W. Adelman (RA-8633)
58 West 40th Street
New York, New York 10018
*Attorneys for Kiki Swinson and
K.S. Publications*

17

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

_____

Melodrama Publishing LLC and
Winslow Shim Literary Agency, Inc.,

                             Plaintiffs,

Index No.: 10 - 34085

-against-

**VERIFIED
COMPLAINT**

K.S. Publications, Kiki Swinson,
Kensington Publishing, Corp., Dafina Books,
and Selena James and Amazon.com, Inc.,

                         Defendants.

_____

       The Plaintiffs, Melodrama Publishing LLC and Winslow Shim Literary Agency,

inc., bring this action against the Defendants captioned above for damages and other

relief, and allege as follows:

### Jurisdiction and Venue

       This Court has jurisdiction because the amount of relief sought is in excess of

\$25,000, and further, Plaintiffs are headquartered and reside in the County of

Suffolk.

### Plaintiffs

    1.     Plaintiff Melodrama Publishing LLC (hereinafter "Plaintiff MP LLC")

is a registered New York State Limited Liability Company with headquarters and a

principal place of business in the County of Suffolk, State of New York.

2.     **Plaintiff Winslow Shim Literary Agency, Inc.** (hereinafter "Plaintiff

WS Inc.), is a registered New York State corporation with headquarters and a

principal place of business in the County of Suffolk, State of New York.

## Defendants

3.     Defendant K.S. Publications (hereinafter "Defendant K.S.

Publications"), upon information and belief, is a corporation or other entity doing

business in the State of New York.

4.     Defendant Kiki Swinson (hereinafter "Defendant Swinson"), upon

information and belief, is a resident of the State of Virginia, and does business in the

State of New York, under her own name, as an author and aspiring publisher.

5.     Defendant Kensington Publishing Corp. (hereinafter "Defendant

Kensington"), upon information and belief, is a registered New York State

corporation with headquarters and a principal place of business located at 119 West

40th Street, 21st Floor, City of New York, County of New York, State of New York

10019.

6.     Defendant Dafina Books (hereinafter "Defendant Dafina"), upon

information and belief, is a subsidiary and book imprint of Defendant Kensington,

operating under the Dafina Books trade name for the purpose of marketing and

publishing urban literature.  Upon information and belief, Defendant Dafina's

headquarters and principal place of business are located at 119 W. 40th Street, 21st

Floor, City of New York, County of New York, State of New York 10019.

2

7.     Defendant Selena James (hereinafter "Defendant James"), upon information and belief, maintains an office in New York, New York at 119 W. 40th Street, 21st Floor, City of New York, County of New York, State of New York 10019, where she is employed by Defendants Kensington and Dafina.

8.     Intentionally omitted.

## STATEMENT OF FACTS

### Melodrama Publishing, Kiki Swinson and Selena James (2000-2004)

9.     Crystal Lacey Winslow (hereinafter "Pres. Winslow") is the President of Plaintiff MP LLC, which she founded and has operated since 2001. Plaintiff MP LLC is in the business of publishing fictional books for the urban literary marketplace.

10.    Since 2001, Pres. Winslow has worked diligently, and has expended significant capital, to grow Plaintiff MP LLC into a literary brand recognized by publications such as *Black Enterprise Magazine, Essence Magazine* and *Publisher's Weekly*.

11.    This success is attributable not just to the expenditure of significant resources and capital by Plaintiff MP LLC, but also to Pres. Winslow's individual commitment and investment of time and efforts to develop and foster the careers of each and every writer whose works are published by Plaintiff MP LLC.

12.    In or about the year 2000, Defendant Swinson self-published her first novel entitled *Mad Shambles*. Due to her lack of success with *Mad Shambles*,

3

Defendant Swinson sought to have her book published by another publishing company and came across Plaintiff MP LLC.

13.   In 2003, Pres. Winslow formed a business relationship with an editor, Defendant James, who at the time worked for the *Simon & Schuster's Pocket Books* imprint. Pres. Winslow met Defendant James when she offered to buy from her the reprint rights to Pres. Winslow's first novel *Life, Love and Loneliness*. At the time, she also offered to sign Pres. Winslow as an author to *Pocket Books* but Pres. Winslow declined.

14.   In or about 2004, shortly after the *Pocket Books* contract offer and success of Pres. Winslow's self-published *Life Love and Loneliness*, and *The Criss Cross* novels on MP LLC, Pres. Winslow was introduced to Defendant Swinson by a mutual acquaintance.

15.   In or about July 2004, Defendant Swinson signed her first publishing contract with Plaintiff MP LLC.

16.   In an effort to create and promote the name brand for her first novel *Wifey*, Pres. Winslow tied her name, Crystal Lacey Winslow, to Defendant Swinson's work via endorsements intended to interest Pres. Winslow's audience in Defendant Swinson's first novel published by Plaintiff MP LLC.

17.   Plaintiff MP LLC expended significant capital and resources to promote the *Wifey* release by and through a comprehensive sales and marketing campaign.

4

18.     Defendant Swinson's *Wifey* was published by Plaintiff MP LLC in
December 2004 and instantly became an *Essence* magazine best selling book.

### Ki Ki Publishing (2005)

19.     Following the success of *Wifey*, in or about, April 2005, Defendant
Swinson informed Pres. Winslow that she would not sign a new contract with MP
LLC and would instead start her own publishing house: *Ki Ki Publishing*.

20.     Through *Ki Ki Publishing*, Defendant Swinson republished her first
independent novel *Mad Shambles*. The re-publication of *Mad Shambles* through
Defendant Swinson's company, *Ki Ki Publishing*, saw no success.

21.     Unsuccessful on her own, and mindful of Pres. Winslow's significant
investment in Plaintiff MP LLC, Defendant Swinson once again sought out Pres.
Winslow in the hopes of signing a new publishing contract with Plaintiff MP LLC.

22.     Defendant Swinson was signed to a new contract with Plaintiff MP
LCC to publish her second book, *I'm Still Wifey*, through Plaintiff MP LLC.

23.     *I'm Still Wifey* was published by Plaintiff MP LLC in November 2005.

24.     As was the case with *Wifey*, Plaintiff MP LLC expended significant
capital and resources to promote the *I'm Still Wifey* release by and through a
comprehensive sales and marketing campaign.

5

25.    Like Defendant Swinson's first book with Plaintiff MP LLC, *I'm Still Wifey* quickly became an *Essence* magazine best selling book.

## Mass Market Licensing/Publishing (2006-2007)

26.    After the success of *I'm Still Wifey*, Defendant Swinson expressed interest in also having Plaintiff WS Inc. represent her (as agent) for the purpose of securing a deal with a major publisher, and/or a sub-licensing agreement for the mass marketing rights of Defendant Swinson's *Wifey* and *I'm Still Wifey* novels, all for the purpose of increasing readership and growing the series' name brand.

27.    Having developed a working relationship with Defendant Selena James from *Pocket Books* back in 2003, Pres. Winslow was able to present Defendant Swinson's novels to Defendant James so that she (Defendant James) would consider them for mass market licensing.

28.    While at *Pocket Books*, however, Defendant James did not express any interest in licensing Defendant Swinson's works, nor did she feel that Defendant Swinson was a right fit for *Pocket Books*.

29.    In the interim, Plaintiff MP LLC continued to build Defendant Swinson's brand, image, and value, re-signing her to Plaintiff MP LLC for additional publishing contracts including: *The Candy Shop/Life After Wifey* (2006), *A Sticky Situation* [2007], and *Still Wifey Material* (2008).

6

## Winslow Shim Literary Agency, Inc. and Mass Marketing with Kensington Publishing Corp. and Dafina Books (2007)

30.    On or about July 2007, Defendant Selena James left *Pocket Books* and went to work as an editor for Defendant Kensington, the largest independently-owned book publisher in the country.

31.    Defendant Kensington owns and operates a variety of book imprints, including Dafina Books (owned by Defendant Dafina)(collectively referred to as "Defendants Kensington/Dafina").

32.    Now employed by Defendants Kensington/Dafina, Defendant James took an interest in Defendant Swinson and her expanding catalog of successful releases published and marketed by Plaintiff MP LLC.

33.    On or about July 2007, Defendant James, on behalf of Defendants Kensington/Dafina, and Pres. Winslow, on behalf of Plaintiff WS Inc. resumed talks regarding Defendant Swinson and her novels.

34.    With Plaintiff WS Inc. acting as Defendant Swinson's agent, Defendant Swinson was offered and accepted a deal from Defendants Kensington/Dafina for the publishing of three (3) novellas (this agreement hereinafter referred to as "Dafina Deal 1").

35.    Dafina Deal 1 earned Defendant Swinson a $100,000 advance.

36.    In addition to Dafina Deal 1 for new works, Plaintiff WS Inc. secured a mass market, re-publishing deal with Defendants Kensington/Dafina for

7

six (6) of Defendant Swinson's titles previously published by Plaintiff MP. LLC in trade paperback format (this agreement hereinafter referred to as "Dafina Deal 2").

37.     The Dafina Deal 2 mass market, sub-licensing agreement provided for $24,000 in advance payments to Defendant Swinson.

38.     Pursuant to the terms and conditions of Dafina Deal 2, Defendant Kensington/Dafina's re-publication dates for the six (6) "Dafina Deal 2" titles were to be scheduled around Plaintiff MP LLC's own publication dates for new works by Defendant Swinson.

## Ex Parte Negotiations with Author Under Contract (2009)

39.     In or about February 2009, Defendant Swinson took the position that if she were to sign directly with Defendants Kensington/Dafina, Defendant James would give her an advance of $200,000 for the release of her next two novels.

40.     Pres. Winslow immediately telephoned Defendant James to confront her about Defendants Kensington/Dafina's alleged offer to Defendant Swinson, which offer was made to Defendant Swinson without her agent, Plaintiff WS Inc., present to negotiate on Defendant Swinson's behalf.

41.     Though Defendant James denied making an offer to Defendant Swinson, Defendant Swinson has stated that such an offer was in fact made but could not be accepted by her because of the agency contract with Plaintiff WS Inc. to broker her next deal.

8

#### Dafina Deal 3 (Summer 2009)

42.    On or about June 2009, Defendant James and Pres. Winslow (on behalf of Plaintiff WS Inc.) began negotiations for Defendant Swinson to sign a third deal with Defendants Kensington/Dafina to include the release of Defendant Swinson's next two novels.

43.    During these negotiations, Defendant Swinson, by way of an e-mail, re-asserted her position that Defendant James had promised an advance of between $175,000 to $200,000 for Defendant Swinson's next two novels.

44.    Defendant James, however, initially offered between $18,000 to $35,000 per book. After negotiations with Plaintiff WS Inc., the offer went up to $45,000, far below what Defendant Swinson was allegedly anticipating.

45.    On or about July 22, 2009, Defendants Kensington/Dafina did offer, and through Plaintiff WS Inc., Defendant Swinson accepted, a third deal (this agreement hereinafter referred to as "Dafina Deal 3") not for mass marketing of previously published books, but instead, for three new novellas.

46.    Dafina Deal 3, which was negotiated and finalized by WS Inc. on behalf of Defendant Swinson, earned Defendant Swinson $41,000 in advances.

#### Contracts Between Defendant Swinson and Plaintiff MP LLC (Fall 2009)

9

47.    In August 2009, MP LLC signed Defendant Swinson to two, full-length book contract deals, each for one title with an option clause for the sequel/follow up to each work (these agreements hereinafter referred to as "MP LLC Deal 1" and "MP LLC Deal 2").

48.    MP LLC Deal 1 was for the novel, *Wifey 4 Life*, which was published in March 2010.

49.    MP LLC Deal 2 was for *Who's Notorious Now?*, which was supposed to be published in November 2010.

50.    As per the terms of MP LLC Deal 1 and 2, Plaintiff WS Inc. was to continue to be Defendant Swinson's agent for all contract negotiations.

## Defendant Swinson's Works for Plaintiff MP LLC (Dec. 2009 to Feb. 2010)

51.    On December 28, 2009, with less than 4 weeks before the book *Wifey 4 Life* was to be printed and shipped to all the major retailers as per MP LLC Deal 1, Defendant Swinson still had not turned in her past due revisions for the *Wifey 4 Life* manuscript.

52.    Since Defendant Swinson missed her deadlines for revisions and did not return Pres. Winslow's calls and messages of December 26 and 28, 2009 in which she pleaded with her to hand in the revised manuscript, Pres. Winslow sent

10

her a letter on behalf of MP LLC informing her that *Wifey 4 Life* would be published
without her past due revisions.

53.    On January 1, 2010, MP LLC moved forward with plans to publish
*Wifey 4 Life*, which does not contain any of Defendant Swinson's revisions.

54.    Although, as per the terms of MP LLC Deal 1 & 2, MP LLC has the
exclusive right to sub-license mass market publishing rights as it sees fit, on
February 19, 2010, Defendant Swinson contacted Pres. Winslow demanding that MP
LLC not sub-license the mass market rights of *Wifey 4 Life* (MP LLC Deal 1) and (the
as of yet to be published) *Who's Notorious Now?* (MP LLC Deal 2) books.

55.    Defendant Swinson's reasoning, she claimed at the time, was that the
$165,000 in advances and tens of thousands of books printed and sold through
Dafina Deals 1, 2 and 3 was "not enough money".

## Defendant Swinson and Defendant K.S. Publications (Feb. 2010 to Mar. 2010)

56.    After receiving an apologetic email from Defendant Swinson on
February 23, 2010, asking if she was still part of MP LLC, Pres. Winslow reached out
to Defendant Swinson in a good faith effort to include her in the decision of whether
or not to negotiate a fourth deal with Defendants Kensington/Dafina.

11

57.     Defendant Swinson then agreed for WS Inc. and MP LLC to go forward with fresh negotiations for a fourth deal with Defendants Kensington/Dafina, and sent Pres. Winslow several e-mails to that effect.

58.     Pres. Winslow then contacted Defendant James (employed by Defendants Kensington/Dafina) in response to Defendant Swinson's requests about what kind of Kensington/Dafina deal could be structured by WS Inc. and MP LLC.

59.     As a result of Pres. Winslow's negotiations on behalf of WS Inc., Defendants Kensington/Dafina, through Defendant James, offered a five (5) novel deal to Defendant Swinson, with the conditions that the publishing dates for the books be scheduled no less than nine (9) to twelve (12) months apart from each other.

60.     Following the offer, Pres. Winslow telephoned Defendant Swinson to discuss with her the particulars of the proposed deal from Defendants Kensington/Dafina, during which conversation Defendant Swinson informed Pres. Winslow that she preferred to stay with MP LLC instead of accepting the offer from Defendants Kensington/Dafina.

61.     During this conversation, Defendant Swinson also assured Pres. Winslow that if MP LLC signed her to another contract, she would improve her work ethic and would not miss the deadline for her next title *Who's Notorious Now?* (MP LLC Deal 2) to be released November 2, 2010.

12

62.     On Monday, March 1, 2010, Pres. Winslow received an email from Defendant Swinson reaffirming her position that she was not interested in signing with Defendants Kensington/Dafina and instead wanted to stay with Plaintiff MP LLC.

63.     On March 1, 2010, as per Defendant Swinson's email, Pres. Winslow sent Defendant James an email turning down the publishing offer from Defendants Kensington/Dafina.

64.     On March 4, 2010, Pres. Winslow sent Defendant Swinson a proposal from Plaintiff MP LLC to publish her next works.

65.     On March 11, 2010, Pres. Winslow discovered that Defendant Swinson was utilizing the social networking site, Facebook, to: (a) gauge public interest in sequels to her books published by Plaintiff MP LLC and (b) to let the public at large know that she (Defendant Swinson) had started her own publishing company, Defendant K.S. Publications.

66.     On March 19, 2010, Defendant Swinson contacted Pres. Winslow to turn down Plaintiff MP LLC's latest contract offer.


**Breach of MP LLC Deal 2 (Mar. 2010 to June 2010)**

13

67. On March 31, 2010, one day before the *manuscript* deadline, Defendant Swinson handed in the *synopsis* for *Who's Notorious Now?* (MP LLC Deal 2). In that e-mail, she also requested a ten (10) day extension to hand in the *manuscript*.

68. On April 10, 2010, Defendant Swinson missed the second deadline extension.

69. On May 18, 2010, Defendant Swinson finally handed in the manuscript, a month and a half late and 15,000 words short.

70. On May 18, 2010, Pres. Winslow emailed freelance editor Melissa Forbes ("Ms. Forbes") to hire her for June 2010 to edit the *Who's Notorious Now?* manuscript in the hopes of releasing the book (MP LLC Deal 2) on its scheduled November 2, 2010 publication date. Ms. Forbes was familiar with Defendant Swinson's work (and vice versa) since she had previously been hired by Plaintiff MP LLC to edit other titles by Defendant Swinson.

71. In her reply to Pres. Winslow, Ms. Forbes, who has been MP LLC's lead editor since 2006, informed Pres. Winslow that Defendant Swinson had already booked her for the next month to edit books for Defendant K.S. Pub.

72. On May 27, 2010, Pres. Winslow discovered on Amazon.com that Defendant K.S. Publications planned to release two new books *The Candy Shop* (on August 24, 2010) and *Wifey Extraordinaire* (December 2, 2010)[both dates as per amazon.com at the time).

14

73.     Because the *Who's Notorious Now?* book (MP LLC Deal 2) was due to
be released on November 2, 2010, the plan to release *The Candy Shop* on August 24,
2010, and *Wifey Extraordinaire* on December 2, 2010 (both through K.S.
Publications) was in breach of MP LLC Deal 2, which called for *Who's Notorious
Now?* to be Defendant Swinson's next release.

74.     On or about May 24, 2010, Pres. Winslow was contacted by Plaintiff
MP LLC freelance graphic designer, "Candace" who informed Pres. Winslow that
Defendant Swinson had offered her (Candace) to print books for Defendants
Swinson and K.S. Publications (Candace turned down the offer).

75.     On or about May 28, 2010, Pres. Winslow telephoned Defendant
Swinson in an effort to convince her to forego publishing *The Candy Shop* and *Wifey
Extraordinaire* through Defendant K.S. Publications since it would be in breach of
MP LLC Deal 2 and the scheduled November 2, 2010 release date for *Who's
Notorious Now?*

76.     On June 13, 2010, Pres. Winslow sent Defendant Swinson a follow up
email asking her to make her revisions to the *Who's Notorious Now?* manuscript in
order to meet the November 2, 2010 publishing date.  Defendant Swinson did not
respond.

77.     On or about June 14, 2010, Pres. Winslow again sent Defendant
Swinson a follow up email asking Defendant Swinson to forego her plan to breach
the MP LLC Deal 2 by moving forward with the K.S. Publication dates.

15

78.     On June 16, 2010, Pres. Winslow was contacted by a representative at the print manufacturer, Malloy Incorporated ("Malloy Inc."), to notify her that Defendant Swinson had contacted Malloy Inc. and Representative Carol Bystrum directly to inquire about printing books.

79.     After calls with editors, designers and printers revealed that all had been contacted by Defendant Swinson, it became clear that Defendant K.S. Publications, through Defendant Swinson's actions, was deliberately misappropriating MP LLC's business relationships and contacts. These same relationships, business contacts and goodwill created by Plaintiff MP LLC were the result of my nine (9) years of investment and efforts on the behalf of Plaintiff MP LLC.

80.     Defendant Swinson's misappropriation of Plaintiff MP LLC's business relationships and contacts for herself and Defendant K.S. Pub all took place during the time that Defendant Swinson continued to neglect her contractual obligation to finish *Who's Notorious Now?* as per the terms of MP LLC Deal 2.

**Cease and Desist Letters to Defendants**

81.     On July 2, 2010, Pres. Winslow sent Defendant Swinson a letter dated July 1st, 2010 (the "July 1st Letter") accepting the *Who's Notorious Now?* manuscript.

82.     In the July 1st letter, Pres. Winslow advised Defendants Swinson that in light of her failure to submit the full *Who's Notorious Now?* manuscript in

16

accordance with the agreed upon deadline, the *Who's Notorious Now?* manuscript, though accepted, could not be published until June 2012 because of the necessary revisions needed due to the poorly written manuscript.

83.     The July 1ˢᵗ letter further advised Defendants Swinson and K.S. Publications to cease and desist from the plan to publish three titles (see below) through Defendants K.S. Pub, since the publication of those titles on the proposed dates (listed below) would be in breach of MP LLC Deal 2:

(1)     *Still Candy Shopping* (Previously titled *Candy Shop 2: Faith Fights Back*)
        Release Date:  October 19, 2010 (Originally scheduled for August 24, 2010)
        Publisher:     KS Publications

(2)     *Wifey Extraordinaire: Part 6*
        Release Date:  May 3, 2011
        Publisher:     KS Publications

(3)     *A Stickier Situation: Part 2*
        Release Date:  Previously scheduled for March 14, 2011
        Publisher:     KS Publications

84.     On July 19, 2010, Pres. Winslow sent the legal department of Amazon.com a letter dated July 19, 2010 in which Defendant Amazon is asked to cease and desist from its plan to sell and distribute *Still Candy Shopping* and *Wifey Extraordinaire: Part 6*.

85.     On July 27, 2010, Defendant James (editor for Defendants Kensington/Dafina) contacted Pres. Winslow to ask what was going on between Defendant Swinson and Plaintiffs MP LLC and WS Inc.

17

86.    During the conversation, Defendant James informed Pres. Winslow
that Defendants Kensington/Dafina signed Defendant Swinson to a mass market
deal for all of Defendant Swinson's forthcoming titles: *Still Candy Shopping, Wifey
Extraordinaire: Part 6* and *A Sticker Situation: Part 2.*

87.    Pres. Winslow then reminded Defendant James that Plaintiff WS Inc.,
had been acting (and at the time, still was acting) as agent for Defendant Swinson,
and that as a result, she (Defendant James) should have never cut Plaintiff WS Inc.
out of the mass market publishing deal signed by Defendant Swinson with
Defendants Kensington/Dafina.

88.    Pres. Winslow also reminded Defendant James that she (Defendant
James) should have never spoken money directly with Defendant Swinson in 2009,
since that conversation likely served as the foundation for this latest deal with
Defendants Kensington/Dafina [see above ¶39-41 on regarding Defendant James' Ex
Parte Negotiations with Author Under Contract).

89.    On August 24, 2010, Defendants Kensington/Dafina and Defendant
James were sent a cease and desist letter demanding that the said Defendants forego
the publishing of *Still Candy Shopping, Wifey Extraordinaire: Part 6* and *A Sticker
Situation: Part 2.*

18

I.

## BREACH OF AGENCY CONTRACT
### (Plaintiff WS Inc. against Defendants Kiki Swinson and K.S. Publications)

90.     Plaintiff WS Inc. repeats each and every allegation made in
paragraphs 1 through 89 as if fully stated herein.

91.     Plaintiff WS Inc. and Defendant Swinson have an agreement (the
"Agency Agreement") pursuant to which Plaintiff WS Inc. is to act as Defendant
Swinson's exclusive literary agent.

92.     The Agency Agreement provides that Plaintiff WS Inc. will be entitled
to a 15% commission of any earnings (advances, royalties, etc.) stemming from any
deal brokered by Plaintiff WS Inc.

93.     On or about late February 2010, Plaintiff WS Inc., by and through Pres.
Winslow, began to broker and negotiate a comprehensive publishing deal with,
Defendant James representing Defendants Kensington/Dafina.

94.     As a result of Pres. Winslow's efforts on behalf of Defendant Swinson
and Plaintiff WS Inc., Defendants Kensington/Dafina, through Defendant James,
offered a five (5) novel deal to Defendant Swinson.

95.     Defendant Swinson declined the offer on March 1, 2010.

96.     Approximately two (2) months later, Defendant Swinson, while still
bound to the Agency Agreement with Plaintiff WS Inc., accepted from Defendants
Kensington/Dafina a comprehensive Publishing Agreement which, upon
information and belief, is worth $150,000 or more (hereinafter the
"Kensington/Dafina Publishing Agreement").

19

97.     The Kensington/Dafina Publishing Agreement was finalized by

Defendant James directly with Defendant Swinson without any notice to Plaintiff WS

Inc., who is Defendant Swinson's exclusive Agent, and as such, is entitled to a

commission consisting of 15% of the advance to Defendant Swinson.

98.     Defendant Swinson had a duty to provide notice to Plaintiff WS Inc.

that she accepted the Kensington/Dafina Publishing Agreement, which Agreement

Plaintiff WS Inc. initially brokered and negotiated on Defendant Swinson's behalf

back in February-March 2010.

99.     Defendant Swinson entered into the Kensington/Dafina Publishing

Agreement, under her own name, and/or that of her alter ego, Defendant K.S.

Publications, without notice to Plaintiff WS Inc., and without regard for her

obligations under the Agency Agreement.

100.    As a result, Plaintiff WS Inc. and Plaintiff MP LLC have been damaged

in that the commission due stemming from the Kensington/Dafina Publishing

Agreement has not been paid.

## II.

### TORTIOUS INDUCEMENT OF BREACH OF AGENCY CONTRACT
### (By Plaintiff WS Inc. against Defendants Selena James, Kensington Publishing and Dafina Books)

101.    Plaintiff WS Inc.   repeats each and every allegation made in

paragraphs 1 through 100 as if fully stated herein.

102.    Defendant James, acting on behalf of Defendant Kensington and

Defendant Dafina, at the time she negotiated the Kensington/Dafina Publishing

20

Agreement with Defendant Swinson, knew that Plaintiff WS Inc. and Defendant
Swinson had an Agency Agreement pursuant to which Plaintiff WS Inc. was to act as
Defendant Swinson's exclusive literary agent.

103.   Defendant James knew about the Agency Agreement because she, on
behalf of Defendant Kensington and Defendant Dafina, had previously negotiated
the Kensington/Dafina Publishing Agreement with Crystal Winslow (President of
Plaintiff WS Inc.) in February-March 2010.

104.   Neither Defendant James, nor her employers, Defendant Kensington
and Defendant Dafina, were parties to the Agency Agreement between Plaintiff WS
Inc. and Defendant Swinson.

105.   With knowledge of the existence of the Agency Agreement, Defendant
James, for her own benefit and on behalf of Defendant Kensington and Defendant
Dafina, intentionally and improperly procured Defendant Swinson's breach of the
Agency Agreement on or about May 2010 (and earlier).

106.   As a proximate result of Defendant James' actions described in ¶ 105,
Defendant Swinson entered into the Kensington/Dafina Publishing Agreement,
under her own name, and/or that of Defendant K.S. Publications, without notice to
Plaintiff WS Inc., and without regard for her obligations under the Agency
Agreement.

107.   As a proximate result of Defendant James' actions described in ¶ 105-
106, Plaintiff WS Inc. and Plaintiff MP LLC have been damaged in that the

21

commission due to Plaintiffs stemming from the Kensington/Dafina Publishing

Agreement has not been paid.

III.

### BREACH OF PUBLISHING CONTRACT
#### (By Plaintiff MP LLC Against Defendants Swinson and K.S. Publications)

108.    Plaintiff MP LLC repeats each and every allegation made in

paragraphs 1 through 107 as if fully stated herein.

109.    In August 2009, Plaintiff MP LLC signed Defendant Swinson to two,

full-length book contract deals: "MP LLC Deal 1" and "MP LLC Deal 2".

110.    MP LLC Deal 2 calls for the publishing of the book *Who's Notorious
Now?*, by an agreed upon date, which date was later agreed to be November 2, 2010.

111.    On March 31, 2010, one day before the *manuscript* deadline, Defendant
Swinson handed in the *synopsis* for *Who's Notorious Now?* (MP LLC Deal 2).

112.    Despite two deadline extensions to submit a conforming manuscript

with a proper word count, Defendant Swinson did not hand in a "final" manuscript

until May 18, 2010.

113.    The "final" manuscript submitted by Defendant Swinson on May 18,

2010,was in breach of the MP LLC Deal 2, since it was untimely and approximately

15,000 words short, requiring additional ghost writing and editing prior to

publication.

22

114.   Defendant Swinson breached the publishing contract with Plaintiff MP
LLC in the manner described in ¶111-113 because she was pre-occupied doing
business with Defendant Kensington, Defendant Dafina and Defendant James under
her own company name, Defendant K.S. Publications, all in further breach of MP LLC
Deal 2.

115.   As a proximate result of Defendant Swinson's multiple breaches of MP
LLC Deal 2, Plaintiff MP LLC has been damaged in that it has had to delay publication
and will have to expend additional money to hire a ghostwriter and editor to revise
the *Who's Notorious Now?* manuscript prior to publication.


## IV.

### TORTIOUS INDUCEMENT OF BREACH OF PUBLISHING CONTRACT
(By Plaintiff MP LLC against Defendants Selena James, Kensington Publishing Corp.
and Dafina Books)

116.   Plaintiff MP LLC repeats each and every allegation made in
paragraphs 1 through 115 as if fully stated herein.

117.   Defendant James, acting on behalf of Defendant Kensington and
Defendant Dafina, at the time she negotiated the Kensington/Dafina Publishing
Agreement with Defendant Swinson, knew that Plaintiff MP LLC and Defendant
Swinson had a Publishing Agreement pursuant to which Plaintiff MP LLC was to
publish Defendant Swinson's next work.

23

118. Defendant James learned about the MP LLC Publishing Agreement ("MP LLC Deal 2") from Crystal Winslow (President of Plaintiff MP LLC) in February-March 2010 when she (Defendant James), on behalf of Defendant Kensington and Defendant Dafina, negotiated the Kensington/Dafina Publishing Agreement with Pres. Winslow.

119. Neither Defendant James, nor her employers, Defendant Kensington and Defendant Dafina, were parties to the MP LLC Deal 2 between Plaintiff MP LLC and Defendant Swinson.

120. With knowledge of the existence of MP LLC Deal 2, Defendant James, on behalf of Defendant Kensington and Defendant Dafina, on or about May 2010, intentionally and improperly procured Defendant Swinson's breach of MP LLC Deal 2 by offering, and closing, the Kensington/Dafina Publishing Agreement with Defendant Swinson.

121. As a proximate result of Defendant James' actions described in ¶ 120, Defendant Swinson entered into the Kensington/Dafina Publishing Agreement, under her own name, and/or that of Defendant K.S. Publications, without notice to Plaintiff MP LLC, and without regard for her obligations under MP LLC Deal 2.

122. As a proximate result of Defendant James' actions described in ¶ 120-121, Defendant Swinson neglected her obligations to Plaintiff MP LLC under MP LLC Deal 2, and instead focused her efforts on fulfilling the requirements of the Kensington/Dafina Publishing Agreement, all at the expense of missing the deadline for submitting the *Who's Notorious Now?* manuscript to Plaintiff MP LLC.

24

123. As a proximate result of the actions described in ¶ 120-122, Plaintiff

MP LLC has been damaged in that the publishing date for *Who's Notorious Now?* has

been delayed, and Plaintiff MP LLC will have to expend additional money to hire a

ghostwriter and editor to revise the manuscript prior to publication.

V

### ANTICIPATORY BREACH AND REPUDIATION OF PUBLISHING CONTRACT
(by Plaintiff MP LLC against Defendants Swinson, K.S. Publications, Kensington
Publishing, Corp., Dafina Books, Selena James )

A.    "Next Work" Clause in MP LLC Deal 2 Forbids Defendants' Pending
      Publications

124. Plaintiff MP LLC repeats each and every allegation made in

paragraphs 1 through 123 as if fully stated herein.

125.   MP LLC Deal 2 between Plaintiff MP LLC and Defendant Swinson

provides that:

> *"the Work (Who's Notorious Now) will be Author's next work, whether under
> Author's name or otherwise, and that Author will not publish or authorize
> publication of any other full-length work of which Author is an author or co-
> author until six months after publication of the Work (Who's Notorious Now)."*

126.  As a proximate result of the acts of the Defendants described in ¶90-

123, Plaintiff MP LLC's publishing date for *Who's Notorious Now?* has been

postponed from November 2010 to June 2012.

25

134.  In light of ¶133, *Still Candy Shopping, Wifey Extraordinaire: Part 6,* and *A Stickler Situation: Part 2* (all listed in ¶129) cannot be published as planned by Defendants because they are actually unauthorized sequels derived from works *(The Candy Shop, Wifey* and *A Stickler Situation)* all previously published by Plaintiff MP LLC.

135.  Plaintiffs have a great likelihood of success on the merits, and are entitled to a preliminary and permanent injunction because the balance of equities is in their favor, and also because, if allowed to be published, the three titles referenced in ¶129 would result in irreparable harm to the Plaintiffs in that the publication of such titles would diminish the value of Plaintiffs' pending full-length title for publication *Who's Notorious Now?,* which Defendant Swinson agreed would be her next full-length title to be published by any publisher.

### C.  "Option" Clause in MP LLC Deal 2 Forbids Defendants' Pending Publications

136.  Section 3 of MP LLC Deal 2 provides Plaintiff MP LLC an "exclusive option to acquire the Author's next full length work for publication", which binds Defendant Swinson to either: (a) submit a "reasonably detailed outline of such work prior to the publication of Work *("Who's Notorious Now")*(and Publisher is to accept or decline within 60 days), or (b) "within 60 days after publication of Work *("Who's Notorious Now),* whichever [(a) or (b)] shall be later".

137.  Section 3 of MP LLC Deal 2 further provides as follows:

*"In the event that Publisher and Author are unable in good faith to agree upon terms of publication, the Author shall be free thereafter to submit such next work to other publishers, provided, however, that the publisher shall retain the first option to acquire the work on terms no less favorable to the Author than those offered by any other publisher. During the exclusive period of this option, Author shall not submit such next*

28

*work to other publishers, nor seek offers from or negotiate with others with respect thereto.*

138.   Instead of honoring MP LLC's "option" as she is bound to as per Section 3 of MP LLC Deal 2, Defendant Swinson has neglected each and every obligation contained in Section 3 of MP LLC Deal 2, and plans to release her next full-length title through Defendant K.S. Publications, with further mass-marketing distribution by Defendants Kensington/Dafina.

139.   Plaintiffs have a great likelihood of success on the merits, and are entitled to a preliminary and permanent injunction because the balance of equities is in their favor, and also because, if allowed to be published, the three titles referenced in ¶129 would result in irreparable harm to the Plaintiffs in that the publication of such titles would diminish the value of Plaintiffs' pending full-length title for publication *Who's Notorious Now?,* which Defendant Swinson agreed would be her next full-length title to be published by any publisher.

D.   "Dispute" Clause in MP LLC Deal 2 Forbids Defendants' Pending Publications

140.   MP LLC Deal 2, Section III, Paragraph B provides as follows:

*"... if there is a dispute regarding publication and/or distribution of said work (Who's Notorious Now?) between Publisher and Author then no work will be printed, distributed or marketed until said dispute is resolved legally or in writing between Publisher and Author".*

141.   This complaint is evidence of such "dispute" as contemplated in MP LLC Deal 2, and as a result, as per the contract, no work by Defendant Swinson should be printed, distributed or marketed until said dispute is resolved.

29

142.   Plaintiffs have a great likelihood of success on the merits, and are

entitled to a preliminary and permanent injunction because the balance of equities

is in their favor, and also because, if allowed to be published, the three titles

referenced in ¶129 would result in irreparable harm to the Plaintiffs in that the

publication of such titles would diminish the value of Plaintiffs' pending full-length

title for publication *Who's Notorious Now?*, which Defendant Swinson agreed would

be her next full-length title to be published by any publisher.

WHEREFORE, Plaintiff Melodrama Publishing LLC and Plaintiff Winslow

Shim Literary Agency, Inc. demand:

Judgment against Defendant Kiki Swinson and Defendant K.S. Publications

finding both Defendants:

(a)   In breach of the Agency Agreement with Plaintiff WS Inc. and Plaintiff MP LLC;

(b)   Jointly and severally liable to Plaintiff WS Inc. and Plaintiff MP LLC for monetary damages in the amount of $22,500, or 15% (whichever is greater) of the advance to Defendant Swinson from the Kensington/Dafina Publishing Agreement (upon information believed to be worth $150,000 or more);

(c)   Jointly and severally liable to Plaintiff MP LLC for monetary damages in the amount of $7,000, which damages are attributable to the need to hire a ghostwriter and editor to revise Defendant Swinson's manuscript submitted in breach of MP LLC Deal 2;

(d)   Jointly and severally liable to Plaintiff WS Inc. and Plaintiff MP LLC for attorneys fees spent by these Plaintiffs to bring this cause of action; and

(e)   Jointly and severally liable for any further relief this court deems justified and necessary.

Judgment against Defendant Selena James, Defendant Kensington Publishing,

Corp. and Defendant Dafina Books finding that the three:

(f)   Tortiously induced the breach of contract by Defendant Kiki Swinson;

(g)   Are jointly and severally liable to Plaintiff WS Inc. and Plaintiff MP LLC for monetary damages in the amount of $22,500, or 15% (whichever is greater) of the advance to Defendant Swinson from the Kensington/Dafina Publishing Agreement (upon information believed to be worth $150,000 or more);

(h)   Jointly and severally liable to Plaintiff MP LLC for monetary damages in the amount of $7,000, which damages are attributable to the need to hire a ghostwriter and editor to revise Defendant Swinson's manuscript submitted in breach of MP LLC Deal 2 as a proximate result of Defendant Swinson's dealings with these Defendants

(i)   Are jointly and severally liable to Plaintiff WS Inc. and Plaintiff MP LLC for attorneys fees spent by these Plaintiffs to bring this cause of action; and

(j)   Are jointly and severally liable for any further relief this court deems justified and necessary.

Injunctive relief under CPLR §6301in the form of:

(k)   A Preliminary Injunction enjoining Defendant Kiki Swinson, Defendant K.S. Publications, Defendant Kensington Publishing Corp., Defendant Dafina Books, Defendant Selena James, and anyone else having notice of the Preliminary Injunction, from publishing or causing to be published any book title authored or co-authored by Defendant Kiki Swinson until six (6) months after the date on which Defendant Swinson's next book title is published;

(l)   Permanent Injunction enjoining Defendant Kiki Swinson, Defendant K.S. Publications, Defendant Kensington Publishing Corp., Defendant Dafina Books, Defendant Selena James, Defendant Amazon.com, Inc., and anyone else having notice of the Preliminary Injunction, from publishing or causing to be published any book title authored or co-authored by Defendant Kiki Swinson until six (6) months after the date on which Defendant Swinson's next book title is published;

(m)   Any further relief, at law or equity, this court deems justified and necessary.

for 2314967                     p.35

## JURY DEMAND

The Plaintiffs hereby demand a jury trial of all issues triable of right by a jury.

Dated:  New York, New York
         September 15, 2010

Respectfully submitted,

Carl E. Person
*Attorney for the Plaintiffs*
325 W. 45th Street - Suite 201.
New York, New York 10036-3803
Tel:  (212) 307-4444
Fax:  (212) 307-0247
email:  carlpers2@gmail.com

32

## VERIFICATION

Carl E. Person, an attorney admitted to practice before the Courts of this
State, hereby affirms under the penalties of perjury, pursuant to CPLR 2106, that the
following is true and correct:

That I have read the foregoing Verified Complaint (the "Complaint") and
know the contents thereof; that the same is true to the best of my knowledge and
belief, except as to the matters therein stated to be alleged upon information and
belief, and as to these matters I believe them to be true. I further state that the
grounds of my knowledge and belief as to all matters in the Complaint are based
upon a review of relevant documents and conversations with the Plaintiffs'
principal.

That the reason this verification is made by me instead of any of the Plaintiffs
is that the Plaintiffs do not reside or have an office for the conduct of business
within the County of New York, which is the County where I have my office.

Dated:       New York, New York
             September 15, 2010

                                              Carl E. Person

33